# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-06-00308-CV

Margaret Anne Erlewine, Appellant

v.

Mark Erlewine, Appellee

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
NO. 98-12664, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING

MEMORANDUM OPINION

Citing evidence of various behaviors of his ex-wife, Margaret Erlewine, Mark Erlewine obtained a succession of five protective orders over a 16-month period—a final protective order dated March 22, 2005, which expired in July 2005; temporary protective orders dated September 15, 2005, November 30, 2005 (the "October 2005 order"[1]), and April 4, 2006 (the "February 2006 order"); and a final protective order dated June 7, 2006, which remains in effect. These orders were granted following evidentiary hearings before several different Travis County trial judges. The current protective order prohibits Margaret[2] from committing family violence, *see* Tex. Fam. Code Ann. § 71.004 (West 2002), and from communicating with Mark; the 12-year-old

---

[1] The parties and the district court refer to the order dated November 30, 2005 as the "October 2005 order" and the order dated April 4, 2006 as the "February 2006 order," referencing the date on which the hearings on these orders were held. We will do the same.

[2] As the parties share the same surname, we will reference their first names.

son of their former marriage, J.J.; and Mark's wife, Dianne, except through an attorney. Margaret appeals. While it is difficult to discern her precise complaints from her *pro se* briefing, we liberally construe her arguments to concern (1) the March 2005 final protective order; (2) the November 30, 2005 temporary protective order; and (3) the current June 7, 2006, final protective order.[3] We affirm.

As an initial matter, we note that several of Margaret's complaints are not properly before us. In her second issue, Margaret asserts that the March 2005 protective order was not—contrary to its title and the representations of her attorney—an "Agreed Protective Order" and that she did not consent to it. In her fifth issue, Margaret contends that Mark's application for the March 2005 order did not comply with certain requirements of the family code. The March 2005 order was a family-violence protective order. *See* Tex. Fam. Code Ann. §§ 85.001, 85.022 (West 2002). Family-violence protective orders that dispose of all parties and issues are final and appealable despite the trial court's continuing jurisdiction to modify the order. *B.C. v. Rhodes*, 116 S.W.3d 878, 881-82 (Tex. App.—Austin 2003, no pet.). The March 2005 order disposed of all issues and parties—Mark alleged actions by Margaret that he claimed entitled him to the protective order, the district court resolved this issue in Mark's favor, and prohibited Margaret from communicating with or contacting Mark, Dianne, and J.J. The duration of the protective order did not depend on further action by the district court, but specified an expiration date of July 21, 2005. Thus, the March 2005 order disposed of all parties and issues and was, therefore, final

---

[3] In addition to pursuing this appeal, Margaret filed a petition for writ of mandamus challenging the June 2006 protective order. This Court denied the petition on October 19, 2006. *See In re Margaret A. Erlewine*, No. 03-06-00533-CV (Tex. App.—Austin Oct. 19, 2006).

and appealable.[4]  *See Rhodes*, 116 S.W.3d at 882; *see also Kelt v. Kelt*, 67 S.W.3d 364, 366 (Tex 2001 no pet.); *Cooke v. Cooke*, 65 S.W.3d 785, 787-88 (Tex. App.—Dallas 2001, no pet.); *Striedel v. Striedel*, 15 S.W.3d 163, 164-65 (Tex. App.—Corpus Christi 2000, no pet.); *Winsett v. Edgar*, 22 S.W.3d 509, 510 (Tex. App.—Fort Worth 1999, no pet.); *James v. Hubbard*, 985 S.W.2d 516, 518 (Tex. App.—San Antonio 1998, no pet.).  Margaret did not timely perfect an appeal from this final order.  *See* Tex. R. App. P. 26.1.  She has, accordingly, waived any error in the March 2005 order.  *See* Tex. R. App. P. 33.1(a).

Similarly, we lack subject-matter jurisdiction over Margaret's complaints regarding the October 2005 temporary protective order because they are moot.  In her first issue, Margaret asserts that there was no evidence to support the issuance of the October 2005 temporary protective order.  In her fourth issue, Margaret argues that the district court's decision to issue the temporary order was influenced by perjured testimony.  In her sixth issue, Margaret asserts that the modification of child support ordered in the temporary order was improper.  The October 2005 order was expressly denoted "temporary" and is no longer in effect.  The same is true of the other temporary orders in this case; they all have been superseded by the June 7, 2006 final protective order.  Complaints relating to temporary orders that have since been superseded by a final order

---

[4] In her reply brief, Margaret contends that the protective order was not final because it did not comply with all of the requirements in the family code.  Such a complaint concerns whether the order was erroneous, not whether it was final and appealable.  Margaret also asserts arguments in her reply brief to the effect that there was no "trial" preceding the March 2005 order and that she had "no ability to mention complaints to the trial court regarding the application [for the protective order] before [the order] was rendered."  Even if this complaint is not foreclosed by her failure to appeal the March order, the record reflects that Margaret appeared before the district court through her attorney of record and that Margaret's attorney signed the order.

are moot. *See In re K.L.R.*, 162 S.W.3d 291, 301 (Tex. App.—Tyler 2005, no pet.); *In re M.C.M.*, 57 S.W.3d 27, 37 (Tex. App.—Houston [1st Dist.] 2001, pet. denied); *In re P.R.*, 994 S.W.2d 411, 417 (Tex. App.—Fort Worth 1999, pet. dism'd w.o.j.), *disapproved on other grounds*, *In re J.F.C.*, 96 S.W.3d 256, 267 & n.39 (Tex. 2002); *Wright v. Wentzel*, 749 S.W.2d 228, 234 (Tex. App.—Houston [1st Dist.] 1988, no writ).

In her third issue, Margaret challenges the sufficiency of the evidence supporting the current June 2006 protective order. We, accordingly, survey the evidence presented to the district court.[5] The district court heard evidence that Mark and Margaret divorced in 1999 and that the divorce decree allowed Margaret only limited visitation with J.J. through "Kids Exchange," a service that provides supervised visitation for children and their parents.

Mark testified that he and Margaret reached an "oral agreement" in 2001 allowing Margaret more contact with J.J. Mark explained, however, that J.J.'s behavior soon became "erratic and disruptive," and that J.J.'s counselor attributed this behavior to Margaret's "verbal abuse" of J.J. In 2003, Mark decided to terminate the informal arrangement with Margaret and the parties resumed visitation according to the divorce decree's terms.

Mark further testified that on March 2, 2005, Margaret appeared unexpectedly at J.J.'s school. The school notified Mark of her appearance and Mark, concerned about Margaret's behavior

---

[5] Subsequent to the submission of this cause, Mark filed a "Motion to Strike Appendix II to Appellant's Amended and Corrected Brief," arguing that he was not served with a copy of the appendix. *See* Tex. R. App. P. 9.5(a). Additionally, Mark contends that the appendix contains documents that are outside of the record and, therefore, should not be considered. *See Carlisle v. Philip Morris, Inc.*, 805 S.W.2d 498, 501 (Tex. App.—Austin 1991, writ denied). We grant Mark's motion to strike as to documents not in the record.

and its effect on J.J., instructed a school official to keep J.J. away from Margaret. The night following this incident, J.J. was "very upset, shaking, very nervous." The next day, Mark applied for a protective order against Margaret. The district court signed the order on March 22.

The March 22, 2005 order prohibited Margaret from (1) committing family violence, (2) communicating directly with Mark, J.J., or Dianne except through an attorney or other appointed representative, (3) going to or near Mark's home, J.J.'s school, or any place where J.J.'s extracurricular activities took place, (4) removing J.J. from Mark's custody, (5) contacting the police or Child Protective Services regarding J.J., and (6) receiving any information about J.J.'s school activities. Additionally, Margaret was ordered to begin counseling within 30 days from the date of the order.

The protective order expired on July 21, 2005. On July 22, Mark filed an application for another protective order alleging that Margaret had violated the March order by failing to begin counseling and by sending a card directly to J.J. with a stamp on the envelope that read, "Stop Family Violence." The district court signed a temporary protective order on September 15, 2005. The September order contained the same requirements as the previous order but additionally prohibited Margaret from communicating a threat to Mark, J.J., or Dianne, engaging in harassing, annoying, alarming, abusive, tormenting, or embarrassing conduct toward them, and going near their residence or places of employment. The order also set a hearing for October 24.

At the October 24 hearing, the district court heard evidence of Margaret's violation of the March and September orders. The district court entered another temporary protective order (the October 2005 order) prohibiting the same conduct as the prior orders but additionally ordering

5

Margaret to obtain a psychological evaluation by January 15, 2006. The district court set a hearing for April 28, 2006 to determine whether a final protective order should be entered.

On February 2, 2006, the district court extended the deadline for Margaret's psychological evaluation and ordered that the psychological report be prepared before the April 28 hearing. The district court entered another temporary protective order (the February 2006 order), similar to the others preceding it. This order contained an additional requirement that Margaret not communicate a threat or engage in harassing, annoying, alarming, abusive, tormenting, or embarrassing conduct toward Mark's attorney of record.

At the final hearing on April 28, Margaret testified that she had completed the psychological evaluation but was unable to produce it for the district court because the psychologist would not release the report "until it's paid in full." Margaret claimed that she was unable to pay for the evaluation. However, Margaret admitted to being employed when the court first ordered counseling and to being able to afford a new car that she purchased in January 2006. The monthly payments on the car were $324.00. When asked if she was currently in counseling, Margaret claimed that she was but was unable to recall the last name of her counselor. Margaret admitted to using the "Stop Family Violence" stamp in a letter to J.J. but claimed that the postcard "went through" her attorney. Margaret also admitted to sending J.J. an email in violation of the protective order but only because "there was no officer of the court to go through." At one point during the hearing, the district court asked Margaret, "Do you agree that these letters and cards that you sent violate Judge Meurer's protective order from February?" Margaret admitted, "They do. But I had no other way to send a letter to my child."

6

The district court also heard testimony from Dr. Gail Johnson, a guardian ad litem appointed by the district court in October "to direct Ms. Erlewine to a psychologist for an evaluation, and to monitor counseling that would proceed from there." Dr. Johnson testified that she spoke with Margaret several times following her appointment "to try and determine a psychologist" but that Margaret indicated to her that she did not intend to obtain a psychological evaluation because "she was in the process of appealing the previous court decisions." Johnson testified that she had difficulty fulfilling her duties as guardian because "Margaret wasn't participating." Johnson explained that Margaret's thoughts on counseling would often "fluctuate" in that she would sometimes want to receive counseling but other times would not. According to Johnson, Margaret eventually agreed to be evaluated by a court-ordered psychologist, Dr. Stephen Thorne. Johnson testified that Dr. Thorne had "completed his meetings" with Margaret but had not finished his evaluation because he was "waiting for further payment" from Margaret. Johnson also summarized Dr. Thorne's findings: Margaret had a "high level of confusion" and "was not always in touch with reality." Dr. Thorne also recommended that "some safeguards needed to be put in place for the child."

During Mark's testimony, the district court asked him questions about J.J.'s welfare:

Q: Has [J.J.] expressed concerns about seeing his mother?

A: He has. I've asked him numerous times if he would like to see his mother. He feels that she needs treatment before he would decide whether he wants to see her. He's concerned about her mental state.

Q: Do you believe he would be in fear if he saw her [show] up at [J.J.'s] school?

A: Yes, I do.

7

Q:     And what would he be in fear of?

A:     Fear of not knowing what her intentions [were] or how she would behave there at school with him.

Mark's answers to Margaret's interrogatories were also admitted into evidence. In the answers, Mark described in detail numerous incidents of what Mark characterized as family violence committed by Margaret between 2003 and 2005, including stalking J.J., endangering J.J.'s safety, threatening and harassing Mark and Dianne, and engaging in verbally and emotionally abusive behavior toward J.J.

When asked if Margaret had violated the February 2006 order, Mark replied, "Yes, she has, by sending letters and emails, and not completing the psychological evaluation." Mark also described an incident in which Margaret showed up at the home of one of J.J.'s friends. This surprised Mark, "because Margaret is fully aware that [J.J.] spends a lot of time over there and could well have been there, and that's a direct violation of the protective order."

At the conclusion of the hearing, the district court found that Margaret "has intentionally violated numerous provisions of the March 2005 protective order and the February 2006 temporary protective order." The district court further found that Margaret "had the ability to pay for her psychological evaluation prior to the hearing today, and that she intentionally did not pay the remaining balance so that the evaluation would not be available to the Court today."

"Based on the numerous violations of the prior protective orders," the district court entered a two-year protective order against Margaret. *See* Tex. Fam. Code Ann. § 85.002

(West 2002).[6] The protective order contained the same prohibitions as the previous orders but included the following additional prohibitions: "[Margaret] will not have the right to be informed of or consulted concerning the child. She will not have the right to access the child's records. She will not have the right to consult with the professionals involved with the child unless specifically requested by that professional." The district court further ordered that Margaret would not have any visits with J.J. until she completed her psychological evaluation with Dr. Thorne. The order was signed on June 7, 2006.

In her third issue, Margaret attacks the legal and factual sufficiency of the district court's findings that Margaret violated the March 2005 and February 2006 orders.[7] A district court's findings of fact are reviewed for legal and factual sufficiency of the evidence under the same legal standards as jury verdicts. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996) (citing *Anderson v. City*

---

[6] Section 85.002 provides:

> If the court finds that a respondent violated a protective order by committing an act prohibited by the order as provided by Section 85.022, that the order was in effect at the time of the violation, and that the order has expired after the date that the violation occurred, the court, without the necessity of making the findings described by Section 85.001(a), shall render a protective order as provided by Section 85.022 applying only to the respondent and may render a protective order as provided by Section 85.021.

Tex. Fam. Code Ann. § 85.002 (West 2002).

[7] Margaret devotes much of her briefing under this issue to the question of whether section 85.002 applied to the March 2005 and February 2006 orders. Margaret asserts that the March 2005 order was not a final order but an ex parte temporary order and that the February 2006 order was an invalid extension of the March 2005 order. However, Margaret never presented these arguments to the district court. Therefore, they are waived. *See* Tex. R. App. P. 33.1(a); *see also Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 185 (Tex. 1978) ("Litigants who represent themselves must comply with the applicable procedural rules, or else they would be given an unfair advantage over litigants represented by counsel.").

*of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991)).**[8]** When reviewing the evidence for legal sufficiency, we consider the evidence in the light most favorable to the challenged finding, crediting favorable evidence if a reasonable fact-finder could and disregarding contrary evidence unless a reasonable fact-finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). Evidence is legally insufficient if the record reveals: (a) the complete absence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence establishes conclusively the opposite of the vital fact. *Id*. at 810. Evidence is legally sufficient if it would enable fair-minded people to reach the finding or verdict under review. *Id*. at 827. In reviewing a factual sufficiency point, we weigh all of the evidence in the record. *See Southwestern Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 631 (Tex. 2004); *Jones*, 917 S.W.2d at 772. Findings may be overturned only if they are so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Jones*, 917 S.W.2d at 772 (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986)).

---

**[8]** Margaret seems to argue in her brief that the district court's findings should be reviewed for both legal and factual sufficiency and abuse of discretion. It is true that in some family law cases, we apply a hybrid standard of review to the district court's findings. *See, e.g.*, *Zeifman v. Michels*, 212 S.W.3d 582, 587-88 (Tex. App.—Austin 2006, pet. denied) (suit to modify conservatorship). However, the supreme court has explained that in cases where the relevant statute provides that the trial court "*shall* enter an order," the trial court has no discretion and acts primarily as a factfinder. *See In re Doe*, 19 S.W.3d 249, 253 (Tex. 2000). In such cases, we apply the normal legal and factual sufficiency standard of review. *See id*. This is such a case. Section 85.002 provides, "If the court finds that a respondent violated a protective order by committing an act prohibited by the order as provided by Section 85.022, that the order was in effect at the time of the violation, and that the order has expired after the date that the violation occurred, the court . . . *shall* render a protective order. . . ." Tex. Fam. Code Ann. § 85.002 (emphasis added). Thus, we do not review the order for abuse of discretion.

Margaret contends that because the district court did not make a finding of family violence, there is insufficient evidence to support the order. Before issuing a family-violence protective order, the district court usually must first find that family violence has occurred and is likely to occur in the future. *See* Tex. Fam. Code Ann. § 85.001(a) (West 2002). However, such a finding is not necessary "[i]f the court finds that a respondent violated a protective order by committing an act prohibited by the order as provided by Section 85.022, that the order was in effect at the time of the violation, and that the order has expired after the date that the violation occurred." *Id*. 85.002.

There was legally and factually sufficient evidence to support the district court's findings that Margaret violated the March 2005 and February 2006 orders. The March 2005 order prohibited Margaret from communicating with J.J. except through an attorney. Margaret admitted that she sent a card to J.J. in June 2005 using an envelope with a "Stop Family Violence" stamp. Although Margaret claimed that this communication "went through" her attorney, a copy of the envelope was admitted into evidence, and it had Margaret's handwritten name and return address on it. A reasonable fact-finder could conclude from this evidence that Margaret sent the letter directly to J.J.

The February 2006 order also prohibited Margaret from communicating directly with J.J. Margaret admitted that in March 2006 she sent an email directly to J.J. because "there was no officer of the court to go through." A reasonable fact-finder could credit this admission as evidence that Margaret violated the February 2006 order. A reasonable fact-finder could also discredit

11

Margaret's testimony that "there was no officer of the court to go through" because a guardian ad litem had been appointed in the case and Mark was represented by counsel.

Additionally, the March 2005 order required Margaret to begin counseling within 30 days from the date of the order with a "physician, psychologist, or licensed therapist or professional counselor" recommended by Dr. Susan McMillan. Mark testified that Margaret did not do so because she had difficulty working with Dr. McMillan. Dr. Johnson also testified to Margaret's difficulty working with Dr. McMillan. A reasonable fact-finder could credit this testimony as evidence that Margaret did not begin counseling as ordered.

Furthermore, the February 2006 order required Margaret to complete a psychological evaluation prior to the April 28 hearing. Margaret admitted that she did not complete the evaluation. Although Margaret claimed that she could not afford to complete the evaluation, a reasonable fact-finder could conclude that this was not true in light of Margaret's testimony that she was able to afford monthly payments of $324.00 for a new car that she purchased in January 2006.

The February 2006 order also expressly prohibited Margaret from coming within 200 yards of any place she reasonably believed that J.J. might be. Mark testified that Margaret visited the home of one of J.J.'s friends in March 2006. Margaret admitted to this, but claimed that she was only seeking to speak with the friend's mother. A reasonable fact-finder could view Mark's testimony and Margaret's admission as further evidence that Margaret violated the February 2006 order.

Considering the above evidence in the light most favorable to the challenged findings, we conclude that the evidence is legally sufficient to support the district court's findings that

Margaret violated the March 2005 and February 2006 orders. We also conclude that the findings are not so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *See Jones*, 917 S.W.2d at 772. Therefore, the evidence is also factually sufficient to support the findings.

We overrule Margaret's third issue.

## CONCLUSION

We affirm the order of the district court.

_____

Bob Pemberton, Justice

Before Justices Puryear, Pemberton and Waldrop

Affirmed

Filed:   August 29, 2007

13