**B.C., Appellant,**

v.

**Scotty L. RHODES on behalf of T.L.R., Appellee.**

No. 03–02–00543–CV.

Court of Appeals of Texas, Austin.

Sept. 11, 2003.

Don Morehart, Law Offices of Morehart and Weinman, Austin, for Appellant.

Alison Gardner, Travis County Atty's Office Protective Orders Div., Austin, for Appellee.

Before Chief Justice LAW, Justices B.A. SMITH and PURYEAR.

## OPINION

BEA ANN SMITH, Justice.

A student at the Texas School for the Deaf claimed that another student she had been dating raped her. Both students are

minors. After a hearing, the trial court found that dating violence had occurred and entered a family-violence protective order. The boy who is subject to the order appeals, claiming that (1) only an adult member of a dating relationship is entitled to seek a family-violence protective order on the basis of dating violence, and (2) the evidence is legally and factually insufficient to support the court's finding that he had committed an act of dating violence. The State has filed a motion to dismiss alleging that we are without jurisdiction to review family-violence protective orders. We hold that, in the absence of other pending litigation between the parties, family-violence protective orders are final and appealable, that minors in dating relationships are entitled to seek such orders, and that there is legally and factually sufficient evidence to support the court's order in this case. We therefore affirm the protective order.

## BACKGROUND

B.C. and T.L.R. were eighth-grade classmates at the Texas School for the Deaf. They both lived on campus during the school year. T.L.R. testified that just prior to the assault, she considered B.C. to be her "boyfriend."

After the two had been "dating" for around two weeks, B.C. initiated an unwanted sexual encounter with T.L.R. One day after school B.C. approached T.L.R. and told her that he wanted to have sex with her. T.L.R. told him "no" and went into a girls' restroom to "try to get away from him." B.C. followed her into the restroom. When he came in she was standing at the far end of the restroom. She told him, "I don't want this." He then approached her and started to take her clothes off. She did not struggle with him because he had a "really weird look on his

face" that scared her.[1] After he had removed all of her clothes, he undressed and told her to "lay down on the floor." Fearful, she complied. B.C. penetrated her. She then pushed him off of her, put her clothes on, and left the restroom. B.C. also got dressed, told T.L.R. not to tell anyone about the incident, and attempted to hug her before she left. T.L.R. testified that while B.C. was on top of her "[her] stomach hurt," and later that day she was scared, could not eat, and her stomach continued to hurt "real bad."

The next day T.L.R. "broke up" with B.C. in the cafeteria, telling him, "This is off." Several of their classmates were present and B.C. became angry and left. In the days following the restroom encounter, T.L.R. related what had happened to her to close friends and some school staff members.

The school initially took steps to protect T.L.R. by putting B.C. in an "alternative education program"—which segregated him from the rest of the school—for ten days. A week after the incident, however, the school placed the two students on the same bus to take them to their respective homes in Waco and Dallas for the weekend. A few weeks after that, T.L.R.'s father sought to obtain a protective order on her behalf. The court first issued a temporary order, then, after holding a hearing, issued a final protective order requiring among other things that B.C. refrain from communicating with T.L.R. and her family, from following and harassing T.L.R and her family, and from going within 25 feet of T.L.R.

## DISCUSSION

### *Jurisdiction*

■ In *Bilyeu v. Bilyeu* we held that a family-violence protective order rendered

---

1. T.L.R.'s counselor testified that T.L.R. later told her that she was afraid of B.C. during this encounter because she knew he had "a tendency to ... blow up."

during the pendency of the parties' divorce is not a final judgment for purposes of appeal. 86 S.W.3d 278, 282 (Tex.App.-Austin 2002, no pet.). At that time we expressly reserved "the issue of whether a protective order rendered post-divorce or in the absence of a pending divorce between the parties is within our jurisdiction to review by appeal."[2] We resolve that issue today.

Family-violence protective orders generally remain in effect for the period stated in the order, which cannot exceed two years. *See* Tex. Fam.Code Ann. § 85.025(a)(1) (West 2002). Such orders are valid and enforceable pending further action by the rendering court or until the order is properly superseded by another court with jurisdiction over the order. *See id.* § 85.009 (West 2002). The issuing court has the power to modify an existing protective order after notice and hearing, *see id.* § 87.001 (West 2002); however, the order generally may not be modified to extend the period of its validity beyond two years after the order was rendered. *See id.* § 87.002 (West 2002).

■ Appellate courts have jurisdiction over appeals from final judgments and certain interlocutory orders that the legislature has designated appealable. *Bilyeu*, 86 S.W.3d at 279; *see Hinde v. Hinde*, 701 S.W.2d 637, 639 (Tex.1985); Tex. Civ. Prac. & Rem.Code Ann. §§ 51.012, .014 (West 1997 & Supp.2003). A judgment or order is final if it disposes of all issues and parties. *See Hinde*, 701 S.W.2d at 639; *Cooke v. Cooke*, 65 S.W.3d 785, 787 (Tex. App.-Dallas 2001, no pet.). Conversely, a judgment or order is interlocutory if it fails to dispose of all issues and parties. *Cooke*, 65 S.W.3d at 787.

Many of our sister courts have addressed this jurisdictional issue and concluded that family-violence protective orders are final and appealable. *See, e.g., Kelt v. Kelt*, 67 S.W.3d 364, 366 (Tex.App.-Waco 2001, no pet.); *Cooke*, 65 S.W.3d at 787–88; *Striedel v. Striedel*, 15 S.W.3d 163, 164–65 (Tex.App.-Corpus Christi 2000, no pet.); *Winsett v. Edgar*, 22 S.W.3d 509, 510 (Tex.App.-Fort Worth 1999, no pet.); *James v. Hubbard*, 985 S.W.2d 516, 518 (Tex.App.-San Antonio 1998, no pet.). The only court in the state to ever hold in a published opinion that these protective orders are not appealable was the Tenth Court of Appeals in *Normand v. Fox*, 940 S.W.2d 401, 402–04 (Tex.App.-Waco 1997, no writ). However, that court recently reversed its position and determined that protective orders are indeed final and appealable judgments. *See Kelt*, 67 S.W.3d at 366. In *Normand*, the court had reasoned that because the trial court retains the power to modify a protective order, such an order does not settle all disputed issues requiring judicial discretion and is therefore interlocutory. *See* 940 S.W.2d at 403.

■ We disagree with the proposition that the continuing ability to modify a protective order renders it interlocutory and therefore prevents it from being appealable. An analogy with permanent injunctions is instructive: a permanent injunction that disposes of all issues and parties is undoubtedly a final, appealable judgment. *See Hubbard*, 985 S.W.2d at 517. This is true despite the fact that the trial court retains jurisdiction to review,

2. Because this issue was not before the *Bilyeu* court, we do not today retreat from the path defined in *Bilyeu*, as the dissent suggests. Rather we distinguish the lack of finality of a protective order issued in the context of a pending divorce which has not disposed of all issues between the parties from the finality of other protective orders that dispose of all issues and all parties.

open, vacate, and modify the injunction upon a showing of changed conditions. *See Cooke*, 65 S.W.3d at 788. Indeed, it appears that the trial court has even broader discretion to modify appealable permanent injunctions than it does protective orders. *See id.* While a trial court may vacate a permanent injunction upon a showing of changed conditions, it may not similarly vacate a protective order on the motion of a party until at least one year after the order was rendered. *Id.* (citing Tex. Fam.Code Ann. § 85.025(b)). Instead, the trial court's jurisdiction during the first year of a protective order is limited to modification of the order. *Id.* (citing Tex. Fam.Code Ann. § 87.001).

■ As with permanent injunctions, the trial court's continuing ability to modify a family-violence protective order does not convert it from final to interlocutory. *See id.* It is the disposition of the parties and the issues—not the retention of jurisdiction—that determines the finality of an order. *See id.* The mere fact that an order may someday be modified simply does not suggest that the trial court has not finally disposed of all the parties and issues. *See id.* We hold that a family-violence protective order that disposes of all the parties and issues can be appealed despite the continuing jurisdiction of the trial court to modify the order. Because the protective order in this case disposed of all the parties and issues, we overrule the State's motion to dismiss and address the merits of the case.[3]

### Minors and Dating Violence

■ In his first point of error, B.C. argues that only an adult member of a dating relationship is entitled to seek a family-violence protective order for dating violence. Because T.L.R. is a minor, B.C. claims that the court was without subject-matter jurisdiction to issue the protective order. We disagree with B.C.'s interpretation of the family code.

■ The primary rule of statutory interpretation is to ascertain and give effect to the intent of the legislature. *Southwestern Life Ins. Co. v. Montemayor*, 24 S.W.3d 581, 583 (Tex.App.-Austin 2000, pet. denied) (citing *Union Bankers Ins. Co. v. Shelton*, 889 S.W.2d 278, 280 (Tex.1994)). If the statute is unambiguous, we are required to seek this intent in the plain and common meaning of its words and not elsewhere. *Id.* (citing *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 352 (Tex.1990); *Seay v. Hall*, 677 S.W.2d 19, 25 (Tex.1984)). A court may not add words to a statute unless necessary to give effect to clear legislative intent. *Id.* (citing *Jones v. Liberty Mut. Ins. Co.*, 745 S.W.2d 901, 902 (Tex.1988); *Meno v. Kitchens*, 873 S.W.2d 789, 792 (Tex.App.-Austin 1994, writ denied)). Furthermore, we must consider the statute as a whole and avoid construing any clause, sentence, or phrase in isolation from the rest of the statute. *Id.* (citing *Morrison v. Chan*, 699 S.W.2d 205, 208 (Tex.1985)).

Section 71.004 of the family code defines family violence as

**3.** The *Normand* court concluded that because protective orders are not appealable, mandamus is the appropriate remedy to challenge them. *See* 940 S.W.2d at 404. We note that neither mandamus nor appeal provides for very effective review of protective orders. Mandamus is a more expeditious remedy, but review is limited to an abuse of discretion standard. Conversely, because of its short duration, a protective order will often expire before a standard appeal is decided. *See id.* at 404–05 (Vance, J., dissenting). We feel that the most appropriate solution to this problem would be for the legislature to provide for appellate review of family-violence protective orders on an accelerated timetable. *Cf. id.*

(1) an act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the member in fear of imminent physical harm, bodily injury, assault, or sexual assault ...;

(2) abuse ... by a member of a family or household toward a child of the family or household; or

(3) dating violence, as that term is defined by [s]ection 71.0021.[4]

Tex Fam.Code Ann. § 71.004 (West 2002).

Section 82.002 sets out who is entitled to seek a protective order:

(a) With regard to family violence under [s]ection 71.004(1) or (2), an adult member of the family or household may file an application for a protective order to protect the applicant or any member of the applicant's family or household[.]

(b) With regard to family violence under [s]ection 71.004(3) [i.e., dating violence], an application for a protective order to protect the applicant may be filed by an adult member of the dating relationship.

(c) Any adult may apply for a protective order to protect a child from family violence.

Id. § 82.002 (West 2002).

B.C. interprets section 82.002(b)—which states that an adult member of a dating relationship may file an application for a protective order—as being the exclusive statutory authorization for filing such an application. His argument entirely ignores section 82.002(c), which states that "any adult may apply for a protective order to protect a child from family violence." Id. Because "dating violence" is expressly defined as a type of "family violence," it follows that any adult may apply for a protective order to protect a child from dating violence. Section 82.002(b) actually operates to restrict adults from filing applications for dating-violence protective orders on behalf of other adults—something they are entitled to do in some circumstances for other types of family violence under section 82.002(a). See John J. Sampson, et al., Sampson & Tindall's Texas Family Code Annotated § 82.002, cmt. (12th ed. 2002) ("[A]ny adult may apply for a protective order for the benefit of a child who is the victim of dating violence."). We overrule the first issue on appeal.

### Sufficiency of the Evidence

 At the conclusion of the hearing, the court found that B.C. had committed family violence against T.L.R. In his second and third points of error, B.C. contends that the evidence is legally and factually insufficient to support the court's finding.

 We review legal and factual sufficiency issues in a bench trial using the same standards that we use in reviewing such issues following a jury verdict. See K.C. Roofing Co. v. Abundis, 940 S.W.2d 375, 377 (Tex.App.-San Antonio 1997, writ denied). In considering legal sufficiency, we consider all the evidence in the light

---

**4.** Section 71.0021, in turn, defines dating violence as

an act by an individual that is against another individual with whom that person has or has had a dating relationship [i.e., a continuing relationship of a romantic or intimate nature] and that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the individual in fear of imminent physical harm, bodily injury, assault, or sexual assault.

Tex. Fam.Code Ann. § 71.0021 (West 2002).

most favorable to the prevailing party, indulging every inference in that party's favor. *Associated Indem. Corp. v. CAT Contracting, Inc.,* 964 S.W.2d 276, 285–86 (Tex.1998); *Raymond v. Rahme & Williams Invs.,* 78 S.W.3d 552, 555–56 (Tex.App.-Austin 2002, no pet.). In reviewing factual sufficiency, we consider all of the evidence and uphold the finding unless the evidence is too weak to support it or the finding is so against the overwhelming weight of the evidence as to be manifestly unjust. *Raymond,* 78 S.W.3d at 556. The trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Id.; Cohn v. Comm'n for Lawyer Discipline,* 979 S.W.2d 694, 696 (Tex.App.-Houston [14th Dist.] 1998, no pet.). We will not substitute our judgment for that of the trial court merely because we might reach a different conclusion. *Raymond,* 78 S.W.3d at 556; *Cohn,* 979 S.W.2d at 696.

As mentioned above, the family code defines dating violence as an act against an individual with whom one has or has had a dating relationship—*i.e.,* a continuing relationship of a romantic or intimate nature—intended to result in physical harm, bodily injury, assault, or sexual assault, or a threat that reasonably places the individual in fear of imminent physical harm, bodily injury, assault, or sexual assault. Tex. Fam.Code Ann. §§ 71.004, .0021. B.C. does not challenge the court's finding that he and T.L.R. were involved in a dating relationship; instead, he claims that there is legally and factually insufficient evidence to prove that the requisite "act" or "threat" occurred.

B.C.'s argument relies on conflicting evidence. Patti McGinnis—one of the staff members in whom B.C. confided—initially testified that B.C. had told her that "they took their clothes off, she changed her mind and then said 'no.' " When recalled to explain this testimony, McGinnis stated that T.L.R. had told her that T.L.R. helped B.C. remove her clothes; however, the subject of whether T.L.R. had ever "changed her mind" was not again discussed.

T.L.R.'s testimony was different. She claimed that she told B.C. "no" twice before he began to undress her, and that she did not help him undress her. Moreover, when T.L.R. was recalled after McGinnis testified, T.L.R. explained: "I think [McGinnis] misunderstood me because of our different signing maybe. I think she misunderstood me because sometimes she doesn't really understand my signs real well, but what I meant to say was that he took off my clothes." [5]

Making all inferences in favor of the trial court's finding, as we must, we conclude that T.L.R.'s testimony describing B.C.'s forced sexual penetration of her constitutes more than a scintilla of evidence that B.C. engaged in an act intended to result in physical harm, bodily injury, assault, or sexual assault to T.L.R. Moreover, we cannot say that the evidence is too weak to support the court's finding or that the finding is so against the overwhelming weight of the evidence as to be manifestly unjust. As the sole judge of the credibility of the witnesses and the weight to be given their testimony, the court was entitled to believe T.L.R.'s ver-

---

**5.** In his factual recitations supporting his second and third points of error, B.C. states that "certain witnesses testified through a sign language interpreter resulting in various opportunities for confusion due to the differences between spoken English and American Sign Language." We find little evidence of any such confusion. The one ambiguity that did come up was satisfactorily clarified by the interpreter.

sion of events. We overrule B.C.'s second and third issues.[6]

## CONCLUSION

In the absence of other pending litigation between the parties, family-violence protective orders are final and appealable. Adults may apply for a protective order for the benefit of a child who is the victim of dating violence. We hold that the evidence is legally and factually sufficient to support the court's findings in this case and affirm the entry of the protective order.

Dissenting Opinion by Chief Justice LAW.

W. KENNETH LAW, Chief Justice, dissenting.

The majority opinion holds that the family-violence protective order at issue in this case is appealable as a final judgment despite the continuing jurisdiction of the trial court to modify the order. I respectfully dissent. Because family-violence protective orders can be modified at any time and for any reason by the trial court, I believe that by statutory design they do not dispose of all the issues and therefore we lack jurisdiction to entertain this appeal.

This Court recently held that a protective order rendered during the pendency of the parties' divorce is not a final judgment for purposes of appeal. *See Bilyeu v. Bilyeu*, 86 S.W.3d 278, 282 (Tex.App.-Austin 2002, no pet.). Although we re-served the issue of whether a protective order rendered in the absence of a pending divorce between the parties is within our appellate jurisdiction, we questioned whether protective orders are properly appealable "in any event." *Id.* at 282 n. 4. Ultimately, we based our holding on reasoning that applies equally to the situation currently before us. We concluded that "there is no final judgment due to the ongoing power and ability of the trial court to revise *any* provision in the protective order at *any* time before it expires." *Id.;* see Tex. Fam.Code Ann. § 87.001 (West 2002). Today, the majority acknowledges the rule that a judgment or order is final if it disposes of all issues and parties, but does not adhere to it. Rather, and contrary to our conclusion in *Bilyeu*, the majority concludes that "a family-violence protective order that disposes of all the parties and issues can be appealed *despite* the continuing jurisdiction of the trial court to modify the order." (Emphasis added.) Notably, the majority fails to provide a principled distinction between a protective order rendered during the pendency of a divorce and one rendered in the absence of a pending divorce. I do not believe that a principled distinction can be made.

This Court would do well to follow *Normand v. Fox*, where the court of appeals reviewed whether it had jurisdiction over an appeal from a protective order rendered *after* the parties divorced. 940 S.W.2d 401 (Tex.App.-Waco 1997, no writ).[1] The *Normand* court held that the

---

6. B.C. also claims that the evidence is legally and factually insufficient to support the trial court's finding that "family violence [is] likely to occur again in the future." We disagree. T.L.R. consistently testified that she feared B.C. The record contains evidence that, while in his alternative education program, B.C. sent a hostile message to T.L.R. through his friend. Moreover, the fact that the school put

T.L.R. and B.C. on the same bus so soon after the incident indicates that it is not taking sufficient care to prevent the recurrence of such an incident.

1. Granted, the court of appeals later reversed itself. *See Kelt v. Kelt*, 67 S.W.3d 364, 366 (Tex.App.-Waco 2001, no pet.). I note that the court did so with little more than a curso-

protective order was not appealable for two reasons. First, the court reasoned that absent explicit statutory authority to review a protective order, the appellate court was without jurisdiction to review the order. *Id.* at 403. Second, the court reasoned that the trial court's retained power and jurisdiction to modify the existing protective order, either by removing provisions from the order or adding a ruling not previously contained in the order, clouded the protective order's finality. *Id.*

The majority does not appear to take issue with the first prong of the analysis in *Normand* but only disputes the second prong, arguing that the order's finality is not clouded for the same reasons that a permanent injunction's finality is not clouded despite a trial court's jurisdiction to review, open, vacate, and modify the injunction. I am unconvinced by this analogy with permanent injunctions. A court's ability to issue injunctive relief ultimately stems from its powers to grant equitable remedies; but its ability to issue a protective order as a result of family violence derives solely from legislative mandate. Thus, a trial court can modify, review, or vacate a protective order because the legislature designated such authority. *See* Tex. Fam.Code Ann. §§ 85.025, 87.001 (West 2000).

As both *Normand* and *Bilyeu* recognized, the trial court's ability to modify a protective order must be considered within the overall statutory scheme of the family code. *See Bilyeu,* 86 S.W.3d at 280, 282; *Normand,* 940 S.W.2d at 403. For example, the legislature designated a suit to modify a Suit Affecting the Parent–Child Relationship ("SAPCR") as a new cause of action. *See* Tex. Fam.Code Ann. § 156.004 (West 2002). In a suit to modify a SAPCR, while any modifications made

by the trial court may alter the effect of the initial SAPCR provisions, the original decree remains final and a new final order results from the modification proceeding. *Id.* Conversely, in a proceeding to modify a protective order, at any time during its existence, all conditions and provisions therein are subject to change. Tex. Fam. Code Ann. § 87.001. Further, there is no statutory provision designating a modification of a protective order proceeding as a new suit or keeping in place any of the original provisions or rulings. Considering that the legislature has specifically designated a motion to modify support or conservatorship as a "new suit," it is hard for me to see finality in a protective order that, in the *same* suit, can be modified in any manner and at any time before expiration.

The majority summarily concludes that the protective order in this case is a final judgment because it disposed of all the parties and issues. But if the protective order is continually subject to modification until the time it expires, then how can it be said that the entire controversy has been settled? The majority deems that the issues have been disposed of, but fails to explain how the trial court's potential modification of the order's provisions will or will not affect those issues. I believe that, in the context of any protective order, it is precisely its particular provisions that are at issue and that the legislature has determined should remain within the province of the trial court. In this case, the trial court could at any time increase or decrease the stay-away provision, allow the applicant and the respondent to communicate, or order the respondent to attend counseling, among other things. These

ry explanation, stating that because it believed that "a protective order *should* be subject to

appellate review, we have reexamined our prior position." *Id.*

changes would themselves be subject to revision. It makes little sense for an appellate court to determine in a lengthy appeal whether these provisions are sufficiently supported by the facts or the law when the legislature has determined that the issues that make up the subject matter of the appeal can be reserved for later disposition by the trial court.[2] Further, how can a trial court act to modify its order when the order is on appeal? Under the most basic rules of determining jurisdiction, has not the trial court's plenary power been superseded by the loss of jurisdiction to the appellate court? Of course, unless also superseded, the trial court has jurisdiction to enforce its order; but nonetheless, it will be without jurisdiction to modify the order's provisions while an appeal is pending.

Expressly concurring with Justice Yañez's dissenting opinion in *Striedel v. Striedel*, in *Bilyeu* we stated that "there are sound reasons for the trial court to maintain its ongoing modification power over the issues and parties." *Bilyeu*, 86 S.W.3d at 282 (citing *Striedel v. Striedel*, 15 S.W.3d 163, 168 (Tex.App.-Corpus Christi 2000, no pet.) (Yañez, J., dissenting)). Even if the majority is willing to retreat from the path that we set out on in *Bilyeu*, I would continue under the policy that "the nature of a protective order and the ills it seeks to eradicate require the

relief it provides to be tailored and revised to suit dynamic conditions and often volatile circumstances." *Striedel*, 15 S.W.3d at 168 (Yañez, J., dissenting). The legislature's decision to reserve in the trial court the broad power to modify any provision of the protective order by including or excluding any item at any time clearly prevents the order from being an appealable, final judgment. Therefore, I would hold that we lack jurisdiction to entertain this appeal. I would further hold that, until the Texas Supreme Court declares that protective orders are final judgments for purposes of appellate jurisdiction, or until the legislature has designated protective orders as appealable interlocutory orders, the proper procedure for appellate review of a family-violence protective order is by the expedient mechanism offered by mandamus.

I respectfully dissent.

---

2. The majority acknowledges that the normal appellate process does not provide for effective review of protective orders because a protective order is of short duration and therefore will often expire before a standard appeal is decided. The majority suggests that "the most appropriate solution to this problem would be for the legislature to provide for appellate review of family-violence protective orders on an accelerated timetable." However, three bills have already been proposed that would provide a right of appeal from protective orders. *See* House Comm. on Juvenile Justice & Family Issues, H.B. 1741, 77th Leg. R.S. (2001); House Comm. on Juvenile Justice & Family Issues, H.B. 2786, 76th Leg. R.S. (1999); House Comm. on Juvenile Justice & Family Issues, H.B. 2811, 75th Leg. R.S. (1997). The bills, premised on the belief that appellate courts do not have jurisdiction to review and consider appeals of protective orders, provided that an appeal of a protective order would be made on an accelerated process with preferential settings and strict deadlines. These bills have never passed.