# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00352-CV

**Brian Hunt, Appellant**

**v.**

**State of Texas for the Protection of K. C., Appellee**

### FROM THE COUNTY COURT AT LAW NO. 4 OF TRAVIS COUNTY,
### NO. C-1-CV-10-011900, HONORABLE MIKE DENTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Brian Hunt, acting pro se, challenges a family-violence protective order entered against him pursuant to Title IV of the Texas Family Code. *See* Tex. Fam. Code Ann. §§ 71.001–87.004 (West Supp. 2012). On appeal, Hunt argues that the trial court erred in: (1) failing to reschedule the hearing on the application for protective order; (2) denying him his right to confront his accuser; (3) finding that Hunt was in a familial relationship with K. C.; and (4) issuing the protective order based on what Hunt asserts were K. C.'s false allegations. We will affirm the trial court's order.

## BACKGROUND

Hunt and K. C. previously dated for an unspecified amount of time, though the two never lived together.[1] On October 9, 2009, while K. C. was visiting Hunt at his home, Hunt

___

[1] The facts recited herein are taken from the affidavit submitted for a temporary protective order and from the testimony admitted at the hearing for the protective order.

became upset about "something not having to do with [K. C]." Hunt was in a "manic state" when he grabbed K. C. by her shoulders and placed his thumbs near K. C.'s neck. K. C. told Hunt that he was hurting her, but Hunt told her he was not. Ultimately, K. C. had to forcibly remove Hunt's hands. K. C. then attempted to leave, but Hunt "kept getting between [K. C.] and the door and continued his manic talking." Hunt kept K. C. in his home for three hours before K. C. convinced him to let her leave. Hunt later apologized for scaring K. C. Five days later, K. C. again visited Hunt at his home, and Hunt again began "talking manic [sic]." K. C. told Hunt that she was not interested in the conversation and that she was leaving. Hunt again refused to let her leave, and given Hunt's size and previous threatening behavior, K. C. "did not feel safe [] push[ing] past him." K. C. began to cry, and Hunt laughed about being "elevated" because he was able to scare her and make her cry.

Subsequently, K. C. and Hunt ended their relationship. Hunt continued to harass K. C. for several months after their relationship ended. Hunt continuously sent K. C. "erratic text messages," including one in which he threatened to commit suicide. Hunt also called members of K. C.'s family and left them threatening messages. In October of 2010, K. C. told Hunt via text message that she did not want Hunt to contact her anymore. Hunt then began sending K. C. "sexual text messages" as well as messages that concerned K. C.'s children and her sister.

K. C. contacted the Travis County Attorney's Office, who assisted her in filing an application for a protective order. K. C. attached an affidavit to her application for a protective order which described Hunt's threatening behavior as outlined above. The affidavit also stated that Hunt had been in recovery but that he was "using drugs and alcohol again." Finally, the affidavit stated Hunt was unstable and that K. C. was in "fear for [her] life and the lives of [her] children."

2

Based on the information in the affidavit, the trial court issued a temporary ex parte protective order and scheduled a hearing for K. C.'s application for protective order. Hunt was given notice of this hearing. The day before the hearing, Hunt faxed a letter to the trial court which stated:

> Brian Hunt gives the court notice by special appearance that he has been called to a family emergency in East Texas and will be unable to attend the hearing scheduled for December 17, 2010 at 8:30 a.m.
>
> If the Court believes it necessary to reschedule, please do so and notify me . . . .

At the hearing on K. C.'s application for protective order, the trial court noted that Hunt was not present and that the court had received Hunt's notice that he would not be attending. The State called K. C. as its sole witness, and K. C. testified about Hunt's threatening conduct as outlined in her affidavit. The trial court found that Hunt had committed an act of family violence against K. C. and that Hunt posed a physical threat to K. C. The court issued a default protective order prohibiting Hunt from contacting K. C. or any member of her family for two years. This appeal followed.

## DISCUSSION

**Failure to reschedule hearing**

In his first and second issues, Hunt asserts that the trial court's decision not to reschedule the hearing for the protective order after Hunt stated he would not be able to attend violated due process and deprived him of his right to confront his accuser. The morning before the hearing, Hunt faxed a letter to the court to let the court know that he would not be attending the hearing. In this letter, Hunt did not request that the court reschedule the hearing so that he could

3

attend, and merely asked the court to notify him if the court "believes it necessary to reschedule." This did not constitute a motion for continuance. Hunt effectively told the court that he would not be attending the hearing, and the court entered a default judgment in accordance with the family code. *See* Tex. Fam. Code Ann. § 85.006(a) (stating that court may render protective order on "respondent who does not attend a hearing" if respondent received service of application and notice of hearing).

Furthermore, the trial court's decision to enter a default protective order did not violate due process. Section 85.006 of the family code states that a court may issue a protective order even when a party to the order does not attend the hearing if the party was properly served with (1) a copy of the application for protective order and (2) a notice of the hearing. The record establishes that both conditions were met in this case. Section 85.006 complies with due process because it requires the court to provide the respondent with notice of the proposed protective order and the time of the hearing where the respondent can object to the order's issuance. *See id.*; *Texas Workers' Comp. Comm'n v. Patient Advocates*, 136 S.W.3d 643, 658 (Tex. 2004) ("Due process at a minimum requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner."); *Polley v. State*, No. 11-03-00340-CR, 2004 Tex. App. LEXIS 11317, at *7–8 (Tex. App.—Eastland Dec. 16, 2004, pet. ref'd) (mem. op., not designated for publication) (explaining why section 85.006 "does not infringe upon the due process clause."). Due process requires that Hunt be given the opportunity to be heard, but Hunt waived that right by failing to attend the hearing. *See Polley*, 2004 Tex. App. LEXIS at * 7–8.

Similarly, Hunt was not denied his right to confront his accuser. He was given notice of the time of the hearing, and had he attended, he would have had an opportunity to confront K. C.

4

and her allegations.  *See Amir-Sharif v. Hawkins*, 246 S.W.3d 267, 270–71 (Tex. App.—Dallas 2007, pet. dism'd).  By failing to attend the hearing, Hunt effectively waived his right to confront K. C.  *Id.*  Thus, Hunt's right to due process and ability to confront his accuser were not violated.  Hunt's first and second points of error are overruled.

**Finding of family violence**

In his third point of error, Hunt asserts, under various theories, that he did not have a "familial relationship" with K. C., and thus issuing a protective order under the family code was improper.  We take this claim to mean that the evidence was insufficient to support the trial court's finding that his alleged assault of K. C. constituted family violence.[2]  In considering the legal sufficiency of the evidence, we consider all evidence in the light most favorable to the prevailing party, indulging every inference in that party's favor.[3]  *See B. C. v. Rhodes*, 116 S.W.3d 878, 884–85

[2] This is a generous interpretation of Hunt's arguments.  *See* Tex. R. App. P. 38.9 (requiring briefs to be construed liberally); *Republic Underwriters Ins. Co. v. Mex-Tex, Inc.*, 150 S.W.3d 423, 427–48 (Tex. 2004) (noting that courts should reasonably but liberally construe appellant pleadings); *Mansfield State Bank v. Cohn*, 573 S.W.2d 181, 184–85 (Tex. 1978) (holding that pro se litigants held to same standard as licensed attorney and must comply with applicable laws and rules of procedure).  Hunt asserts that the trial court lacked subject matter jurisdiction to hear this case because he had no familial relationship with K. C. and because K. C. was married to someone else at the time of the alleged assaults.  However, Hunt does not cite to any legal authority to support these arguments, and to the extent they represent distinguishable points of error, we find them to be waived as inadequately briefed.  *See* Tex. R. App. P. 38.1(i) (requiring clear and concise arguments with appropriate citations to authorities); *Amir-Sharif v. Hawkins*, 246 S.W.3d 267, 270 (Tex. App.—Dallas 2007, pet. dism'd) (noting that court "cannot speculate as to the substance of" appellant's issues when inadequately briefed).

[3] As we will discuss, K. C.'s testimony was the only evidence admitted at the hearing on the application for protective order.  Therefore, we need not separately analyze whether the evidence is factually sufficient to support the family-violence finding because there is no evidence to contradict K. C.'s statements.  *See B. C. v. Rhodes*, 116 S.W.3d 878, 884–85 (Tex. App.—Austin 2003, no pet.) (distinguishing legal from factual sufficiency and noting that factual-sufficiency

(Tex. App.—Austin 2003, no pet.) (analyzing sufficiency of evidence to support dating-violence finding) (internal citations omitted). In a bench trial the court is the trier of fact, and therefore is the "sole judge of the credibility of witnesses and the weight to be given to their testimony." *Id.* at 884 (internal citations omitted). We defer to the trial court's findings if they are reasonably supported by the record. *Id.*

K. C. alleged that she and Hunt had previously dated, and that his threatening behavior occurred during and after their relationship. Under the family code, "dating violence" is a form of "family violence." *See* Tex. Fam. Code Ann. §§ 71.0021 (defining dating violence), 71.004(3) (listing dating violence as form of family violence). Thus, if the evidence is sufficient to prove that Hunt's alleged assault of K. C. constituted dating violence, the evidence is necessarily sufficient to establish that the alleged assault constituted family violence. *See id.* § 71.004(3). Dating violence is defined as an act "committed against a victim [] with whom the actor has or has had a dating relationship." *See id.* § 71.0021(a)(1)(A). "Dating relationship" is further defined as a "relationship between individuals who have or have had a continuing relationship of a romantic or intimate nature. The existence of such a relationship shall be determined based on a consideration of: (1) the length of the relationship; (2) the nature of the relationship; and (3) the frequency and type of interaction between the persons involved in the relationship." *See id.* § 71.0021(b).

In his brief, Hunt describes the nature of his relationship with K. C., which he claims was "ephemeral at best." Hunt notes that "at no time were [he and K. C.] considered or

---

review concerns whether "finding is so against the overwhelming weight" of contradicting evidence) (internal citations omitted).

recognized [to be] in a dating relationship." None of these alleged facts are contained in the record before us, and thus, we do not consider them on appeal. *See* Tex. R. App. P. 38.1(g) (requiring that facts pertinent to appellate issues "must be supported by record references"); *Carlisle v. Phillip Morris, Inc.*, 805 S.W.2d 498, 501 (Tex. App.—Austin 1991, writ denied) (noting that materials outside the record may not be considered on appeal). Similarly, we cannot consider the affidavits from Hunt and his friend which were submitted to the trial court nearly two months after the court issued the protective order. *See Regal Fin. Co. v. Texas Star Motors, Inc.*, 355 S.W.3d 595, 603 (Tex. 2010) (noting that appellate court only considers evidence before fact-finder in determining sufficiency of evidence). Therefore, we must determine whether K. C.'s testimony, which was the only evidence before the trial court, was legally sufficient to establish that Hunt committed dating violence. *See id.*; *see also B. C.*, 116 S.W.3d at 884–85.

In her testimony, K. C. stated that: (1) she and Hunt dated in the past; (2) Hunt previously assaulted her as outlined above; and (3) that Hunt continued to send her harassing messages after their relationship ended. Given that the trial court issued the protective order, we can infer that the court found K. C. to be credible. *See B. C.*, 116 S.W.3d at 884 (noting that trier of fact is sole judge of credibility). Thus, K. C.'s uncontroverted testimony reasonably supports the trial court's finding that she and Hunt had previously dated, that Hunt had assaulted and threatened her during their relationship, and that Hunt continued to harass her after their relationship had ended. Therefore, the evidence was legally sufficient to support the trial court's conclusion that Hunt had committed dating violence, and by extension family violence, against K. C. *See* Tex. Fam. Code Ann. §§ 71.0021, 71.004(3). Hunt's third point of error is overruled.

**False allegations**

In his fourth and final point of error, Hunt claims that K. C.'s testimony contains false statements that constitute aggravated perjury. *See* Tex. Penal Code Ann. § 37.03(a) (West 2011) (defining aggravated perjury). While Hunt does not explain how this alleged perjury is relevant on appeal, we note that a defendant's due-process rights may be violated if the State uses false testimony to obtain his conviction, regardless of whether the State knew the testimony was false. *See Ex parte Robbins*, 360 S.W.3d 446, 459–60 (Tex. Crim. App. 2011). We assume, without deciding, that this principle applies in the context of protective orders. Therefore, we construe Hunt's argument to mean that his right to due process was violated by the State's use of K. C.'s false testimony to obtain a protective order. *See* Tex. R. App. P. 38.9 (requiring briefs to be construed liberally); *Republic Underwriters Ins. Co. v. Mex-Tex, Inc.*, 150 S.W.3d 423, 427–48 (Tex. 2004) (noting that courts should reasonably but liberally construe appellant pleadings).

However, there is no evidence in the record that K. C.'s testimony contained false statements. In his brief, Hunt again makes factual assertions that contradict K. C.'s testimony. These alleged facts have no basis in the record, and therefore we cannot consider them on appeal. *Carlisle*, 805 S.W.2d at 501 (noting that materials outside the record may not be considered on appeal). Thus, Hunt's claim that K. C. made false allegations leaves us with nothing to review. *See* Tex. R. App. P. 38.1(g) (requiring that facts pertinent to appellate issues "must be supported by record references"). Hunt's fourth point of error is overruled.

## CONCLUSION

Having overruled all of Hunt's issues on appeal, we affirm the trial court's order.

8

_____

Diane M. Henson, Justice

Before Justices Puryear, Pemberton, and Henson

Affirmed

Filed:   August 31, 2012