# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-24-00377-CV

---

**Lindsay Austin Olschewsky, Appellant**

**v.**

**Scott Michael Olschewsky, Appellee**

---

**FROM THE 126TH DISTRICT COURT OF TRAVIS COUNTY**
**NO. D-1-FM-24-000236, THE HONORABLE KARIN CRUMP, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Lindsay Austin Olschewsky appeals the trial court's judgment denying her request for a Family Code protective order against her spouse, Scott Michael Olschewsky.[1] In a sole appellate issue, Lindsay[2] contends that the evidence was factually insufficient to support the trial court's finding that no family violence had occurred. She argues by pointing to four purported instances of family violence. But in each instance, we conclude, the evidence to support the finding of no family violence is not so weak, nor is the finding so against the great weight and preponderance of the evidence, as to be clearly wrong and unjust. We therefore affirm.

---

[1] Beyond this protective-order suit, the parties were also involved in a divorce suit.

[2] Because the parties share a surname, we use their given names to reduce confusion.

**BACKGROUND**

Lindsay applied for a Family Code protective order against Scott for her own protection and for that of the couple's two children. The older child (Son) was seven years old at the time of the final trial on the protective-order application, and the younger child (Daughter) was five. The final trial doubled as an evidentiary temporary-orders hearing in Scott and Lindsay's divorce suit. In both her affidavit in support of the protective-order application and her testimony at the final trial on the application, Lindsay testified to several incidents of what she asserted was family violence by Scott against her, Son, or Daughter. The other witnesses at the final trial were Scott, Scott's mother, his brother, and a CPS investigator. After the close of the evidence, the trial court denied Lindsay's protective-order application (and issued temporary orders in the divorce suit), finding that no family violence had occurred. Lindsay now appeals the trial court's judgment denying her protective-order application.

**DISCUSSION**

Lindsay in her sole appellate issue contends that the evidence was factually insufficient to support the trial court's finding that no family violence had occurred. We review evidence-sufficiency issues in these circumstances under the familiar standards. *See B.C. v. Rhodes*, 116 S.W.3d 878, 883–84 (Tex. App.—Austin 2003, no pet.). Because the parties tried the case to the bench, the trial court, as factfinder, is the sole judge of the witnesses' credibility and the weight to be given to their testimony. *McCombs v. State*, No. 03-24-00450-CV, 2025 WL 1910923, at *2 (Tex. App.—Austin July 10, 2025, no pet.) (mem. op.). And for any evidence that is conflicting, we must presume that the factfinder resolved the conflict in favor of its finding if a reasonable person could. *Sheen v. Sheen*, No. 03-18-00358-CV, 2019 WL 2554570, at *3 (Tex.

2

App.—Austin June 21, 2019, no pet.) (mem. op.). We will not substitute our judgment for the trial court's just because we might reach a different conclusion. *B.C.*, 116 S.W.3d at 884.

For appellants challenging the factual sufficiency of the evidence to support a finding on an issue on which the appellant bore the burden of proof, the appellant must show "that the adverse finding is against the great weight and preponderance of the evidence." *State v. V.T.*, 575 S.W.3d 921, 925 (Tex. App.—Austin 2019, no pet.) (quoting *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam)). In our review, we consider all the evidence, both for and against the finding under attack. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam); *Godfrey v. Godfrey*, No. 03-07-00220-CV, 2008 WL 3166328, at *1 (Tex. App.—Austin Aug. 8, 2008, no pet.) (mem. op.). We may set aside the finding "only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust." *Dow Chem.*, 46 S.W.3d at 242.

A finding of family violence is necessary for a Family Code protective order. *See* Tex. Fam. Code §§ 81.001, 85.001. "Family violence" for these purposes includes "an act by a member of a family or household against another member of the family or household that is intended to result in . . . assault, . . . but does not include defensive measures to protect oneself." *Id.* § 71.004(1). Lindsay in her appellate arguments focuses on this assault portion of the definition and invokes the definition of "assault" in Penal Code section 22.01(a)(3). That statutory provision defines "assault" as when a person "intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative."[3] Tex. Penal Code § 22.01(a)(3).

---

[3] We and other Texas courts have reasoned that acts constituting assault under Penal Code section 22.01 also constitute acts of family violence under Family Code section 71.004. *See, e.g.*,

3

Lindsay argues that the evidence showed that Scott had committed four acts of offensive-contact assault and thus family violence.[4] However, to the extent that her arguments rest on her own testimony, because the trial court as factfinder was entitled to disbelieve any of her testimony, her testimony alone does not mean that the evidence as a whole was factually insufficient to support the trial court's finding of no family violence. *See Aderhold v. Bell*, No. 03-24-00258-CV, 2025 WL 2485158, at \*6 (Tex. App.—Austin Aug. 29, 2025, no pet. h.) (mem. op.); *J.G. v. M.G.*, No. 02-24-00496-CV, 2025 WL 2264197, at \*5 (Tex. App.—Fort Worth Aug. 7, 2025, no pet.) (mem. op.); *Dempsey v. Dempsey*, 227 S.W.3d 771, 777 (Tex. App.— El Paso 2005, no pet.).

Otherwise, Lindsay points to other evidence of the four purported instances of offensive-contact assault. The first, she argues, rests on Scott's testimony that he has bumped into her while the two have been walking through their home. Scott testified to "walking by and like us bumping shoulders or doing something like that" and admitted that he had done this bumping for petty reasons. As to his intent surrounding the bumping, Scott testified:

> Q. And you would admit that you had initiated some of this physical contact, correct?
> A. I—I would argue it would be more mutual, walking past each other, and just stupid things. I mean, I don't—I don't pursue her to go and initiate any contact. No, sir.
>
> Q. Well, you're walking in the hallway. You don't avoid it, either, do you?
>
> A. Most of the time, yes, I do, sir.

---

*Mpacko v. Ngue*, No. 03-25-00122-CV, 2025 WL 2471788, at \*9 (Tex. App.—Austin Aug. 28, 2025, no pet. h.) (mem. op.); *J.G. v. M.G.*, No. 02-24-00496-CV, 2025 WL 2264197, at \*4–5 (Tex. App.—Fort Worth Aug. 7, 2025, no pet.) (mem. op.).

[4] She concedes that in none of the purported incidents did Scott cause anyone serious bodily injury, but she rightly points out that a finding of serious bodily injury is unnecessary for the issuance of a family-violence protective order.

4

Q. Okay. I didn't ask you most of the time. Are there times that you intentionally don't even try to avoid it?

A. Times that I intentionally don't even try to avoid it. Yes, there are some times where I don't walk around if she's walking at me.

He gave more context about their physical contacts, testifying that Lindsay had always initiated them:

Q. There's no dispute here that there's been physicality between the two of you over a significant period of time, true?

A. Physical—what do you mean by physicality, sir?

Q. By your own testimony, there's—

A. There's—

Q. —physical contact between the two of you for a good long period of time.

A. Yeah, we've discussed the evidence.

Q. And your testimony is you've never been the aggressor. You've always been the victim, correct?

A. I don't know if I'd use the word victim, but I am always the person who is the second. I am not the person who goes and initiates this physicality with my wife.

Q. When you say the second, what do you mean?

A. I mean I do not initiate any of this with my wife.[5]

In light of Scott's testimony about how Lindsay had initiated the physical contacts, which reasonably could have encompassed the bumping, the trial court's finding that the bumping did not amount to offensive-contact assault was supported by factually sufficient evidence. The

---

[5] Lindsay in her testimony admitted that she has been violent with Scott by brushing shoulders with him in the hallway.

evidence was factually sufficient to support a finding that Scott "did not know, nor should he have known, that [Lindsay] would find that particular contact to be offensive or provocative at that time." *See J.G.*, 2025 WL 2264197, at *6.

The second incident that Lindsay raises on appeal comes from behavior that Scott admitted "was not [his] finest moment." He testified that while riding in the car with Lindsay and the children, Lindsay started poking him and then grabbed a bottle of sunscreen. He then testified that she tried to spray him with the sunscreen, which led to his grabbing the bottle from her and spraying sunscreen at her instead. They soon got back home and went on with their day. As with the first purported instance of offensive-contact assault, the evidence about this second instance was factually sufficient to support a finding that there was no assault. Scott's testimony that Lindsay attempted the very conduct that when committed by him purportedly amounted to an offensive-contact assault allowed the trial court to find that Scott did not know, and that neither should he have known, that Lindsay would find the conduct to be offensive or provocative at that time. *See id.*

Third, Lindsay raises a purported instance of offensive-contact assault that relies on her own testimony. We explained above that the trial court could have disbelieved her testimony—a credibility determination that we may not second-guess. And Scott disputed the truth of her testimony, denying that he, as Lindsay testified that he had, had hit her in the back of the head with a bottle of cleaning solution:

> Q. And you deny that in the Fall of 2023, that you hit her over the head with a Meyer's cleaning spray bottle that you took from her hand and broke in half, hitting her in the head, correct?
>
> A. As I recall, I took that bottle and threw it down after she sprayed me in the face with that cleaner, sir.

6

Q. The question is: Do you deny that you hit her on the head with that?

A. That's not what I recall, sir.

Q. Sorry?

A. I do not recall that, sir.

Q. So you're not denying it. You simply don't recall it.

A. I—I have read her testimony, and I'm denying what her testimony says. I don't—so—no, I did not hit her over the head repeatedly with—

Q. There is no dispute that something occurred in the Fall of 2023 with regard to that Meyer's cleaning spray bottle, correct?

A. Yes, sir. I—I took it from her hand when she sprayed me in the face with the cleaner.

Because the trial court could have chosen to believe Scott over Lindsay, the evidence was factually sufficient to support a finding that there was no offensive-contact assault in this instance.

Finally, Lindsay points to Scott's testimony about an incident when Son's mouth was injured by Scott's leg. He testified that the incident began with the children in an agitated state, leading him to pick Daughter up to put her in a timeout and separate the children. Then, Scott testified, Son dove at his feet, and although Scott did not at first think that Son had hurt himself, Scott soon discovered that Son's lip was bloodied after contacting Scott's shin, perhaps because of a loose tooth. Other evidence showed that Son suffered a torn oral frenulum in the incident. Scott in his testimony denied Lindsay's testimony that he had kneed Son in the face quickly and aggressively.

Regarding this same incident but elsewhere in the evidence, Lindsay in her cross-examination testimony admitted that medical records from Son's doctor's visit soon after the incident nowhere mention that Scott kneed Son in the face or that Son's lip or tooth "or

7

anything like that" were injured. And Lindsay admitted that even though Son told the doctor that he had been "bonked" by Scott, the doctor, who is a mandatory child-abuse reporter, did not report any abuse arising out of the incident. Otherwise, the CPS investigator testified about his investigation into the family, including specifically discussions that he had with Son and Daughter, and the investigator explained that neither child had made any suggestion of abuse by Scott. Ultimately, the investigator testified, the state Department of Family and Protective Services concluded that the allegation of neglectful supervision of the children by Scott was "ruled out," meaning that in the Department's view, any evidence of his neglectful supervision failed to show by a preponderance of the evidence that neglectful supervision had occurred.

In light of all this, we conclude that the evidence was factually sufficient to support a finding that there was no offensive-contact assault in this instance. The evidence supported a finding that Scott had not intentionally or knowingly caused physical contact with Son. *See* Tex. Penal Code § 22.01(a)(3). We thus overrule Lindsay's sole appellate issue.

## CONCLUSION

We affirm the trial court's judgment.

_____

Chari L. Kelly, Justice

Before Chief Justice Byrne, Justices Triana and Kelly

Affirmed

Filed: October 2, 2025

8