# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00518-CV

**Nemona Febonio, Appellant**

**v.**

**The State of Texas for the Protection of Fawn Li, Appellee**

### FROM COUNTY COURT AT LAW NO. 4 OF TRAVIS COUNTY
### NO. C-1-CV-08-004175, HONORABLE MIKE DENTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Nemona Febonio challenges a protective order entered against her pursuant to Title IV of the Texas Family Code. *See* Tex. Fam. Code Ann. §§ 71.001-87.004 (West 2008). In two issues, Febonio contends that the evidence was legally and factually insufficient to support the trial court's findings that domestic violence had occurred and that it was likely to reoccur. We will affirm the order of the trial court.

## FACTUAL AND PROCEDURAL BACKGROUND

At the protective order hearing, Fawn Li testified that she and Febonio had dated for 13 years and had been living together at Li's residence until their relationship ended in October 2007. Li filed her application for a protective order in April 2008, alleging that after their separation Febonio had continued to harass her and her family, repeatedly tried to determine her whereabouts, and caused her to have to move five times in six months. Li recounted several incidents over the

course of their relationship when she was frightened by Febonio's violent and aggressive behavior. The first instance of abuse that Li testified about took place when the couple lived in Oregon in the mid-1990s and Febonio jumped across the bed and choked her. Li stated that on two recent occasions, Febonio became angry while Li was driving and kicked the windshield with the heel of her boot, cracking the glass on the passenger side of the car; during the most recent incident, Li was driving on Mopac Expressway at the time. Li also referred to a time when she awoke to find Febonio, apparently intoxicated, standing above her and making stabbing motions at her with a large, ten-inch Virgin Mary statue. Li testified that she was very frightened and locked Febonio out of the bedroom.

Li also testified about the events that precipitated the couple's break-up in October 2007. She stated that, because Febonio had grown increasingly violent and destructive, she had decided to pack a bag with a change of clothes and a toothbrush in case she needed to flee the house. One night, she and Febonio got into an argument, and when she went for her bag and tried to leave, Febonio grabbed her around the throat and put her in a "choke hold." Li said that she felt very afraid and repeatedly asked Febonio to stop. After Febonio released her and Li again began to leave, Febonio picked up a plaster yard statue and threw it "near" Li.[1] It shattered next to her on the lawn, and Li got in her car and drove away while Febonio continued to yell obscenities at her.

One of Li's friends testified that she had once seen Febonio slam a car door on Li while Li was trying to get out of the car during an argument, and that Febonio had slammed the door

---

[1] Li testified on cross-examination, "She threw it near me, I do not know if she threw it at me, at the grass, I know that she was trying to convey her anger at me and it scared me."

forcefully in a manner that could have injured Li. She also stated that, since Li and Febonio's relationship had ended, Febonio had continued to try to contact Li, made threatening statements, and sent harassing text messages and e-mails.

Febonio also testified at the hearing. Regarding the October 2007 incident, Febonio stated that she did not think she got her whole arm around Li's neck, but she admitted that she did grab Li from behind and yelled at her not to leave.[2] She further testified that she had flung the plaster statue out of frustration because she was sad about Li leaving. Regarding the incident with the car door that Li's friend testified to, Febonio stated, "I slammed the door but [Li] was not—she was sitting in the car she wasn't trying to get out." On cross-examination, Febonio denied that she had tried to find out where Li lives "purposely," but said that she had found out "by accident" and sent her a box of chocolates.

At the conclusion of the hearing, the trial court found that Febonio had committed family violence and that family violence was likely to occur again in the future. The trial court entered a protective order effective until May 16, 2010, directing Febonio not to have any contact with Li or any member of her family and ordering her to submit to an alcohol and drug evaluation. Febonio's motion for new trial was overruled by operation of law, and this appeal followed.

In two issues, Febonio argues that the evidence is legally and factually insufficient to support the trial court's findings that (1) family violence has occurred and (2) family violence is likely to occur in the future.

---

[2] She did not explicitly deny putting Li in a choke hold, but stated, "I can't imagine choke holding somebody, I didn't have my boots on[;] I was barefoot."

## STANDARD OF REVIEW

When the trial court acts as a fact finder, we may review its findings under traditional legal and factual sufficiency standards. *In re Doe*, 19 S.W.3d 249, 253 (Tex. 2000); *B.C. v. Rhodes*, 116 S.W.3d 878, 883-84 (Tex. App.—Austin 2003, no pet.). In considering legal sufficiency, we consider all the evidence in the light most favorable to the prevailing party, indulging every inference in that party's favor. *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 285-86 (Tex. 1998); *Raymond v. Rahme & Williams Invs.*, 78 S.W.3d 552, 555-56 (Tex. App.—Austin 2002, no pet.). We sustain a legal sufficiency complaint if the record reveals: (a) the complete absence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence establishes conclusively the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). The ultimate test for legal sufficiency is whether the evidence at trial would enable reasonable and fair-minded people to make the finding under review. *See id.* at 827. In reviewing factual sufficiency, we consider all of the evidence and uphold the finding unless the supporting evidence is so weak or the finding so against the overwhelming weight of the evidence as to render the finding manifestly unjust. *Raymond*, 78 S.W.3d at 556.

Under both our legal and factual sufficiency standards, the fact-finder is the sole judge of the witnesses' credibility and the weight to be given their testimony. *See City of Keller*, 168 S.W.3d at 819 (under legal-sufficiency standard, fact-finder is "the sole judge[] of the credibility of the witnesses and the weight to be given their testimony"); *Pool v. Ford Motor Co.*,

4

715 S.W.2d 629, 635 (Tex. 1986) ("in conducting a factual sufficiency review, a court must not merely substitute its judgment for that of the jury"). We will not substitute our judgment for that of the trial court merely because we might have reached a different conclusion. *Raymond*, 78 S.W.3d at 556.

## DISCUSSION

In her first appellate issue, Febonio argues that the evidence is legally and factually insufficient to support the trial court's finding that family violence has occurred.

The family code provides that a trial court shall enter a protective order if, after a hearing, it finds that family violence has occurred and is likely to occur in the future. Tex. Fam. Code Ann. §§ 81.001, 85.001 (West 2008). "Family violence," as used in the trial court's findings, includes "dating violence." *See id.* § 71.004(3) (West 2008). "'Dating violence' means an act by an individual that is against another individual with whom that person has or has had a dating relationship and that is intended to result in physical harm, bodily injury, assault, or sexual assault or that is a threat that reasonably places the individual in fear of imminent physical harm, bodily injury, assault, or sexual assault, but does not include defensive measures to protect oneself." Tex. Fam. Code Ann. § 71.0021; *B.C.*, 116 S.W.3d at 884. There is no dispute that Febonio and Li were involved in a dating relationship. Febonio claims by her first issue that the evidence is legally and factually insufficient to prove that the requisite "act" occurred, given that (1) "none of these events were reported"; (2) "there is no evidence of a notice in writing issued to [Febonio] to cease and desist"; and (3) "[t]here were not injuries."

Febonio's arguments are not supported by the plain text of the statute, which does not condition a finding of family violence on showing that a police report was ever filed or that a cease and desist notice was ever issued. Nor does the statute require that the perpetrator's conduct actually *result* in physical harm or bodily injury, so long as physical harm, bodily injury, or assault was intended. *See* Tex. Fam. Code Ann. § 71.0021(a). Indulging all inferences in favor of the trial court's finding that family violence had occurred, as we must, we conclude that Li's testimony describing Febonio's attempts to choke her constitutes more than a scintilla of evidence that Febonio engaged in an act intended to result in physical harm, bodily injury, or assault to Li. Li's repeated statements that she felt threatened by Febonio's conduct and that Febonio's actions made her fearful further support the trial court's conclusion. Moreover, we cannot say that the evidence is too weak to support the court's finding, or that the finding is so against the overwhelming weight of the evidence as to be manifestly unjust. As the sole judge of the credibility of the witnesses and the weight to be given their testimony, the court was entitled to believe Li's version of events. We overrule Febonio's first issue.

By her second issue, Febonio argues that the trial court's finding that family violence was likely to occur in the future is also unsupported by legally and factually insufficient evidence. Febonio concedes that although the evidence arguably supports the conclusion that she engaged in harassment, it does not compel the conclusion that she is likely to commit future family violence against Li. We disagree. The trial court could have reasonably inferred from Li's and her friend's testimony that Febonio's hostile and admittedly harassing behavior constituted a "threat that reasonably places the individual in fear of imminent physical harm, bodily injury, [or] assault,"

6

*see id.*, that was likely to reoccur in the future, given Febonio's continued attempts to contact Li and members of her family. *See B.C.*, 116 S.W.3d at 885 n.6 (evidence legally and factually sufficient to support finding when victim repeatedly testified that she feared B.C. and he had sent hostile message to her through his friend). We overrule Febonio's second issue.

## CONCLUSION

We hold that the evidence is legally and factually sufficient to support the trial court's findings. Accordingly, we affirm the protective order.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Puryear and Henson

Affirmed

Filed: August 25, 2009

7