# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-19-00074-CV

**Aaron Erickson, Appellant**

**v.**

**Stephanie Reeh, Appellee**

### FROM THE 22ND DISTRICT COURT OF HAYS COUNTY
### NO. 17-0784, THE HONORABLE R. BRUCE BOYER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Aaron Erickson appeals the trial court's final order in this suit to modify the parent-child relationship. The trial court modified the existing joint managing conservatorship, among other conditions, to give the mother, Stephanie Reeh,[1] the exclusive right to designate the child's primary residence within Hays or Uvalde Counties. Erickson contends that the evidence of a material and substantial change in the circumstances of the child or a conservator affected by the decree is legally and factually insufficient and, therefore, the trial court abused its discretion in modifying the conservatorship provisions of the parties' agreed divorce decree. *See* Tex. Fam. Code § 156.101(a)(1). We will affirm the trial court's order modifying the parties' final divorce decree.

---

[1] At the hearing, Reeh testified that her current surname is Bonnette due to a legal name change. However, because the trial court's final order on appeal and all of the parties' pleadings refer to her as Stephanie Reeh, we will refer to her by that name in this opinion.

## BACKGROUND

The parents were divorced by an agreed final decree rendered on July 14, 2015. The decree appointed the parties as joint managing conservators of their child (Daughter); granted Erickson the exclusive right to designate Daughter's primary residence within Uvalde, Hays, or Bexar Counties; and instituted a standard possession order.

On May 22, 2017, Reeh filed a petition to modify the parent-child relationship, alleging that the circumstances of the child, a conservator, or other party affected by the decree had materially and substantially changed since its rendition. At time of filing, Daughter was five years old. Reeh filed a sworn supporting declaration with her petition alleging a recent family-violence incident involving Erickson and his then live-in fiancée, part of which the child witnessed. The declaration further alleged that a SWAT team responded to a call that Erickson possessed a loaded gun and that he threatened to harm himself, after which he surrendered and later voluntarily admitted himself for a seventy-two-hour psychiatric evaluation. The live-in fiancée was quoted as alleging that Erickson had abused prescription medication and committed family violence against her.

Reeh's petition alleged that Erickson had engaged in a history or pattern of family violence and asked that he be excluded from possession of the child or, alternatively, that his visitation be supervised, and that she be appointed sole managing conservator or the parent with the right to designate Daughter's primary residence. Reeh asked that the court grant an extraordinary ex parte temporary restraining order excluding Erickson from possession of the child until a hearing; render temporary orders granting the foregoing relief; and order a child custody evaluation, a psychological evaluation, and execution of necessary releases.

The trial court issued an extraordinary temporary restraining order and set the case for a temporary-orders hearing. After a June 5 hearing, the trial court rendered temporary orders appointing the parents temporary joint managing conservators with neither having the right to designate Daughter's primary residence and her residence being established within Hays and Uvalde Counties. The temporary orders created a modified possession schedule of a "week on, week off," conditioned upon Erickson's executing a release for Reeh's attorneys to access protected health information and a doctor's and therapist's confirmation that he was not a danger to himself or Daughter. The temporary orders referred to a separate order appointing a doctor to conduct psychological testing of the parties and prepare and file a report with the court. The temporary orders provided that no unrelated persons would be in the same residence with the child from 8 p.m. to 8 a.m.; that Reeh would reside at her parents' or her home in Uvalde, Texas; and that Erickson would execute releases for protected health information. The temporary orders terminated prior support orders and ordered that neither parent would provide support to the other effective June 5.

On August 2, Reeh filed a motion to compel Erickson to comply with the court's order requiring him to contact the custody evaluator. After a hearing on the motion and on Reeh's motion for additional temporary orders, the trial court rendered additional temporary orders on September 20 granting Reeh the exclusive right to designate Daughter's primary residence within Uvalde County and requiring her to attend school based on Reeh's residence in Uvalde County until further order of the court. The September 20 temporary orders also required Erickson to make an appointment with the custody evaluator "to be interviewed, examined, evaluated, and consulted with" on or before September 29 and changed possession and custody of Daughter back to a standard possession schedule.

3

On December 19, Reeh filed another motion for temporary orders, seeking child support from Erickson and to enjoin him from harassing her and the staff at Daughter's school. On the same date, she also filed a second motion to compel Erickson to comply with the custody-evaluator order. On January 2, 2018, Reeh filed a motion to enforce possession or access after Erickson allegedly refused to return Daughter to her as required by the temporary orders. The trial court heard Reeh's various motions on February 22, after which it rendered an order requiring Erickson to complete all testing and evaluation with the custody evaluator by May 15 and noting that, if he did not complete it by then, the court "may" ask the evaluator to complete her report without the benefit of Erickson's evaluation and testing. The court also rendered an order finding that Erickson had violated the provisions of its prior order regarding possession but specifically found that he was not in contempt for the violation. On March 16, the trial court rendered additional temporary orders requiring Erickson to pay Reeh $500 in monthly child support and to notify her in advance if he desires to pick up Daughter from school for his weekend periods of possession.

On September 12, the trial court conducted a bench trial, after which it issued a letter ruling on November 5, 2018. The Court, in essence, made the previous temporary orders the court's final orders, finding that "since the date of divorce substantial changes have occurred or become manifested," granting Reeh's petition to modify, and appointing her the parent with the exclusive right to determine Daughter's residence within Hays and Uvalde Counties and including child support. The Court signed a final order January 2, 2019.

**STANDARD OF REVIEW**

"A trial court's order modifying a joint managing conservatorship will not be disturbed on appeal unless the complaining party can show a clear abuse of discretion." *Echols*

4

*v. Olivarez*, 85 S.W.3d 475, 477 (Tex. App.—Austin 2002, no pet.); *see Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985) (explaining that trial court abuses its discretion when it acts in arbitrary or unreasonable manner or without reference to guiding principles). This standard involves "a two-pronged inquiry: (1) whether the trial court had sufficient information on which to exercise its discretion; and (2) whether the trial court erred in its application of discretion." *Echols*, 85 S.W.3d at 477–78. The focus of the first issue is on the sufficiency of the evidence under traditional sufficiency-review standards. *Zeifman v. Michels*, 212 S.W.3d 582, 588 (Tex. App.—Austin 2006, pet. denied). In reviewing legal sufficiency, we view the evidence in the light most favorable to the trial court's determination, indulging all reasonable inferences in its favor; in reviewing factual sufficiency, we consider all of the evidence and will uphold the finding unless the evidence is too weak to support it or the finding is so against the overwhelming weight of the evidence as to be manifestly unjust. *B.C. v. Rhodes*, 116 S.W.3d 878, 883–84 (Tex. App.—Austin 2003, no pet.). Under the second issue, the appellate court determines whether, based on that evidence, the trial court made a reasonable decision. *Zeifman*, 212 S.W.3d at 588. The fact that we might decide the issue differently from the trial court does not establish an abuse of discretion. *Id.* at 578. The trial court, the observer of "the witnesses' demeanor and personalities," does not abuse its discretion "as long as some evidence of a substantive and probative character exists" to support its decision. *Id.*

## DISCUSSION

In one issue, Erickson contends that the trial court abused its discretion in finding that there had been a material and substantial change in the parties' or Daughter's circumstances because the record does not contain both historical and current evidence of the parties' circumstances. *See Zeifman*, 212 S.W.3d at 589, 594 n.1; *see also* Tex. Fam. Code § 156.101(a)(1)

5

(requiring trial court to find material and substantial change in circumstances regarding parents or child since prior order to modify conservatorship provisions). To prove that a material and substantial change in circumstances has occurred, the petitioner must demonstrate what conditions existed at the time of the entry of the prior order as compared to the circumstances existing at the time of the hearing on the motion to modify. *Zeifman*, 212 S.W.3d at 589. Without both sets of data, the trial court has nothing to compare and cannot determine whether a change has occurred. *Id.* at 594 n.1. The party seeking modification bears the burden of establishing a material and substantial change in circumstances from the date of the prior order, and if she fails to meet that burden, the trial court must deny the petition. *Id.* at 589. Whether circumstances have materially and substantially changed is a fact-specific determination not guided by rigid or definite rules. *Id.* at 593.

Before we consider whether there was sufficient evidence of a material and substantial change in circumstances upon which the trial court could exercise its discretion, we first dispense with Reeh's contention that Erickson has "waived" his appellate complaint by virtue of his consent to the June 5, 2017 agreed temporary orders.[2] The cases she cites in support of her position pertain specifically to a party's consent to an agreed final judgment, not agreed temporary orders. *Cf. Baw v. Baw*, 949 S.W.2d 764, 766 (Tex. App.—Dallas 1997, no writ) ("A party cannot appeal from a judgment to which it has consented or agreed absent an allegation and proof of fraud, collusion, or misrepresentation." (citing *Gillum v. Republic Health Corp.*, 778 S.W.2d 558, 562 (Tex. App.—Dallas 1989, no writ)). Erickson is appealing the trial court's

---

[2] The temporary orders recite that the "parties have agreed to the terms of this order as evidenced by their signatures below," but Erickson's signature does not appear on the order. His attorney's signature appears under the notation "approved as to form only." Reeh contends that Erickson did not object at trial when the trial court characterized the temporary orders as agreed. We will assume for the purposes of our discussion that Erickson agreed to the temporary orders.

6

final order, which is not an agreed judgment, and the cases Reeh cites are, therefore, inapplicable. We therefore determine that he has not waived his complaint.

Both Reeh and Erickson testified at trial, and the trial court admitted several exhibits into evidence, including the various temporary orders that it rendered while this cause was pending.[3] Below, we summarize the evidence arguably related to changes in the parties' or Daughter's circumstances since the decree was rendered.[4]

### Reeh's testimony

Reeh testified that in May 2017 Erickson "had an incident at his home with his ex-fiancee, leading CPS, SWAT team, police, law enforcement to be involved." Reeh learned about the "incident" when Daughter was "delivered to [her] by an unknown individual," and Erickson explained to her via text that he had been in a roofing accident. However, Reeh had "since heard [Erickson] testify under oath" about what really happened, which was "an altercation with [Erickson's] now ex-fiancee that involved the children [Daughter and the ex-fiancee's child] at home, and [the ex-fiancee] was at fault for it." She explained that Erickson testified that after the incident, he was admitted to Shoal Creek Hospital for a seventy-two-hour observation period because he had "attempted suicide" in the course of the altercation. As a result of the incident, Erickson and Reeh, through their attorneys, "came to an agreement" that Erickson would no longer be primary custodian of Daughter, and they "shared" Daughter during

---

[3] There was no report of the custody evaluator admitted at trial, and the only indication in the record explaining the report's absence is a letter ruling from the trial court stating, "It is unfortunate that a report and recommendation from [the custody evaluator] was not available."

[4] Erickson makes a cursory argument in his brief that evidence of changes in circumstances that occurred after Reeh's petition was filed is not relevant to a consideration of whether there has been a substantial and material change in circumstances since the decree was rendered. We have previously rejected such contention. *See Coburn v. Moreland*, 433 S.W.3d 809, 831–32 (Tex. App.—Austin 2014, no pet.).

summer 2017 until Reeh got primary custody of her in August, after which she enrolled her in kindergarten at Uvalde Classical Academy, as the school year was just beginning.

Reeh testified that Erickson had missed some of his summer visitation with Daughter in 2017 and the recent Labor Day weekend preceding trial. She spoke about a medical incident in August 2017 involving Daughter, who had a nosebleed all day and started vomiting blood in the evening. Reeh took Daughter to the ER, after which she was transferred to a children's hospital in San Antonio. Reeh notified Erickson, who later arrived at the hospital acting "very belligerent" and using "lots of foul language" in the hospital room. Since the incident, Erickson "bring[s] it up in the Our Family Wizard[5] about how [Reeh] tried to kill [D]aughter."

Reeh testified that she had complied with all the requirements in the trial court's June 5, 2017 order appointing a psychologist as a custodial evaluator, including making payments and in-office visits and testing. She explained that she filed two motions to compel seeking to get Erickson to comply with the June 5 order and filed a motion for enforcement when Erickson failed to turn over Daughter to her in February 2018. She also stated that Erickson was $1,500 behind on his child-support payments.

Reeh explained that she is now engaged to a man, with whom she does not live, and spoke about a recent "concerning" incident when Erickson had a video phone call with Daughter while Reeh and Daughter were on vacation in Hawaii with Reeh's fiancée. During the call, Erickson asked Daughter, "Did you find the ganja? Are you smoking the ganja in Hawaii? Are you getting ganja?" Erickson was laughing and slurring his words during the call.

---

[5] Our Family Wizard is a website that is designed to facilitate communications between divorced or separated parents. *See* The Our Family Wizard Website Review, https://www.ourfamilywizard.com/about-us/OFW-review-for-parents (last visited March 9, 2020).

Reeh testified that, at the time of the parties' divorce, she lived in an apartment above her parents' home. At the time of the hearing, she lived in her own apartment in Uvalde with Daughter and her child from another marriage. Her apartment is "right up the road" from Daughter's only cousins, with whom Reeh and Daughter spend "a lot of time." She explained that although she was unemployed at the time of the divorce, she is currently employed, working daily from 9:00 a.m. until 3:00 p.m. She has been Daughter's primary caregiver since June 2017. Since Daughter has started school, Reeh picks her up from school at 3:30, after which they come home to do homework, eat a snack, attend soccer practice (if applicable), and then have dinner, bath, and books before bedtime between 8:00 and 8:30 p.m. Daughter speaks with Erickson on the phone nightly for about ten to fifteen minutes, which has been occurring since the parties were divorced. She said that when Erickson attempts to speak with Daughter over the phone but Daughter is not in much of a talking mood, he "call[s] [Daughter] rude and become[s] very upset with her," causing the child to "cry and break down." After Reeh attempts to "reassure [Daughter] that maybe Dad just had a bad day," Daughter "will insist on calling her dad back to please him until she feels like he is okay."

On cross-examination, Reeh admitted that several circumstances about which she was complaining regarding Erickson existed both at the time of trial and at the time the decree was rendered: his mental-health issues; his financial instability and mental abusiveness towards her and other romantic partners; his use of Daughter as leverage; his verbal abusiveness towards her and Daughter; and his harassing behavior towards her.

### Erickson's testimony

Erickson explained that the "incident" about which Reeh testified occurred on a morning in May 2017 after he had dropped off Daughter at school and returned home, at which

point his ex-fiancée "was completely freaking out and told [him] she was going to kill herself." His ex-fiancée's behavior sent him "into shock" and he "made a lot of bad choices that [he] feel[s] horrible about." He was holding a gun during the incident because he "did not want [his ex-fiancée] to be able to get her hands on it." He believed he was suffering from PTSD that day, triggered by his ex-fiancée's behavior. He did not threaten his ex-fiancée or attempt suicide that day, but he was taken to the Shoal Creek Hospital "because of everything [his ex-fiancée] was saying." He was admitted about 9:00 that night and, while the facility was "ready" to release him at 3:00 p.m. the next day, it "let [him] out first thing in the morning" the following day because of paperwork that needed to be filed.

He testified that his ex-fiancée sought a protective order against him due to the May 2017 incident. He explained that he was investigated for family violence against his ex-fiancée but was cleared of all charges. He said that in July 2017 at the protective-order hearing, he and his ex-fiancée signed an agreed injunction to stay away from and not harass each other. He testified that both he and his ex-fiancée have since received an oral ruling that they had each violated the injunction, but that oral ruling has not been reduced to a signed order.

Erickson admitted that he did not complete the requirements in the June 5, 2017 custody-evaluator order. He also stated that he now has a new fiancée who lives with him.

*Analysis*

The Court heard evidence of material and substantial changes in the parties' circumstances that occurred since the decree was rendered. First, Erickson was involved in a domestic-violence incident with his ex-fiancée that involved his holding a gun, the arrival of SWAT and police, and his admittance to a mental-health hospital for overnight suicide watch. Erickson's ex-fiancée filed an application for a protective order against him as a result of the

10

incident. After a hearing on the application, the parties signed an agreed injunction to stay away from and not harass each other. Erickson then was alleged to have violated that order. Secondly, the trial court ordered the parties to submit to psychological testing and comply with the requests of the court-ordered custody evaluator. Erickson failed to comply with the order after being given several extensions. Thirdly, the trial court ordered Erickson to pay child support to Reeh, but he was alleged to have failed to make those payments multiple occasions.

Since the decree was rendered, Reeh has moved into her own apartment and obtained gainful employment. She has become Daughter's primary caregiver, has been the parent with the right to designate Daughter's primary residence since September 2017, has enrolled Daughter in school near her home, and has established and maintained stable daily routines for her. Reeh and Erickson are each engaged to be married to third parties, and Erickson's new fiancée lives with him. While Erickson points to Reeh's testimony that various of Erickson's circumstances have not changed since rendition of the decree, the trial court was free to weigh that evidence against the above-cited evidence of significant events that have occurred since rendition of the decree. *See B.C.*, 116 S.W.3d at 884 (noting that trier of fact is "the sole judge of the credibility of the witnesses and the weight to be given their testimony").

We also note that for the trial court's two sets of temporary orders changing the parent with the right to designate Daughter's primary residence (first from Erickson to neither parent and then to Reeh), the court had to make implied findings that the orders were in Daughter's best interest and that her then-current circumstances "would significantly impair [her] physical health or emotional development." *See* Tex. Fam. Code § 156.006(b) (providing conditions under which trial court may render temporary order that changes designation of person with right to designate child's primary residence while suit for modification is pending).

11

The record does not reflect that Erickson objected to or otherwise challenged these temporary orders, and there is no reporter's record of those hearings. *Cf. In re Ostrofsky*, 112 S.W.3d 925, 928–30 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding) (determining that trial court's temporary order changing designation of person with right to designate child's primary residence was subject to mandamus review for abuse of discretion). The trial court's prior implied findings that Erickson's continued primary or shared custody of Daughter was likely to impair her physical health or emotional development serve as further evidence supporting material and factual changes in Erickson's circumstances. *See In re B.D.A.*, 546 S.W.3d 346, 363–64 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (noting that trial court may consider its own prior orders and fact findings as evidence); *see also Zeifman*, 212 S.W.3d at 588 (noting that when trial court does not issue findings of fact and conclusions of law, all facts necessary to support its ruling and supported by evidence are implied in favor of its decision).

Considering all of the evidence and the various temporary orders that were admitted as evidence—several of which document Reeh's attempts to get Erickson to comply with court orders related to the custody of Daughter and determining what is in her best interest—we cannot conclude that the trial court abused its discretion or did not have legally or factually sufficient evidence upon which to exercise its discretion to determine that there have been material and substantial changes in the parties' or Daughter's circumstances since the rendition of the divorce decree. Accordingly, we overrule Erickson's sole issue.

In a sub-issue, Erickson contends that the trial court "failed to find that modifying the Decree was in the best interest of the child," and that such an express finding was required. *See* Tex. Fam. Code § 156.101(a) (permitting trial court to modify conservatorship order if modification would be in child's best interest). However, the final order recites, "The following

12

orders are for the safety and welfare *and in the best interest of the [] child*." (Emphasis added.) To the extent we understand Erickson's sub-issue to be challenging the specificity of the language in the final order referring to the modification of the decree being in the child's best interest, we overrule it, as he has cited no authority requiring any particular language beyond the recitation in the final order.

## CONCLUSION

We affirm the trial court's order modifying the final divorce decree.

_____

Thomas J. Baker, Justice

Before Justices Goodwin, Baker, and Kelly

Affirmed

Filed: March 12, 2020